UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BURLINGTON SCHOOL DISTRICT,    )
                               )
          Plaintiff,           )
                               )
     v.                        )    Case No. 2:22-cv-215
                               )
MONSANTO CO., SOLUTIA, INC.,   )
and PHARMACIA LLC,             )
                               )
          Defendants.          )

## OPINION AND ORDER

The Burlington School District ("BSD") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School.  Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto") are successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades.  The Complaint alleges that Monsanto failed to alert BSD to the dangers posed by the presence of PCBs in school buildings, testing revealed dangerous levels of PCBs on the school campus, and Monsanto is now liable for the cost of razing and rebuilding the school.  Pending before the Court is Monsanto's motion to dismiss the entire case as untimely, and in the alternative to dismiss BSD's public nuisance, private nuisance, and trespass counts for failure to state a claim.

For the reasons set forth below, the motion to dismiss is denied.

## Factual Background

According to the allegations in the Complaint, Monsanto manufactured, marketed, sold, and distributed PCBs beginning in the 1920s.  At least 99% of all PCBs sold in the United States were manufactured by Monsanto.  PCBs were used in building materials and have reportedly been shown to off-gas harmful toxins.  The Complaint alleges that Monsanto knew about the dangers posed by PCBs as early as the 1930s and misled the public, including BSD, about those dangers.  Monsanto stopped manufacturing PCBs in the 1970s.

BSD owns Burlington High School and Burlington Technical Center (the "School").  Most of the six School buildings were constructed in the mid-1960s.  PCBs were discovered at the School in July 2019 in the course of environmental testing related to a planned renovation of the campus.  Additional testing in 2020 allegedly revealed PCB levels that exceeded health and safety standards.

As a result of the high PCB levels, BSD shut down the School in September 2020 and leased a former Macy's department store to serve as a temporary educational facility for its students.  The Complaint alleges that after exploring options for remediating the School, BSD determined that it needed to

2

raze most of the buildings and replace them.  Design,
construction, and replacement of the facilities, together with
demolition and removal of PCB-contaminated facilities and soils,
will reportedly cost at least $190 million.  BSD brings this
lawsuit against Monsanto to recover those costs.

The Complaint asserts six causes of action: public
nuisance; private nuisance; strict liability – defective design;
strict liability – failure to warn; trespass; and negligence.
Pending before the Court is Monsanto's motion to dismiss the
Complaint.  Monsanto argues in part that all of BSD's claims are
barred by Vermont's six-year statute of limitations because BSD
knew or reasonably should have known, no later than 2015, that
school buildings built in the 1960s could have actionable levels
of PCBs.  BSD filed its Complaint in 2022.  Monsanto also argues
that BSD has failed to state plausible claims for private
nuisance, public nuisance, and trespass as a matter of law.  BSD
opposes the motion to dismiss.

## Discussion

### I.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for
dismissal of a complaint when the plaintiff fails to allege
sufficient facts "to state a claim to relief that is plausible
on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007); *see* Fed. R. Civ. P. 12(b)(6).  A claim is facially

plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II.  Timeliness

There is no dispute that BSD's claims are subject to Vermont's statutory limitations period for civil actions. Under the Vermont statute, 12 V.S.A. § 511, a civil action must "be commenced within six years after the cause of action accrues." "[A]ccrual occurs upon 'discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.'" *Sutton v. Purzycki*, 2022 VT 56, ¶ 81 (quoting *Abajian v. TruexCullins, Inc.*, 2017 VT 74, ¶ 12). "In other words, discovery occurs and the limitations period begins when a

4

plaintiff 'knows or should know of the injury and its cause.'"
*Sutton*, 2022 VT 56, ¶ 81 (quoting *McLaren v. Gabel*, 2020 VT 8, ¶
35).[1]

Dismissal based on a statute of limitations is appropriate
when "it is clear from the face of the complaint, and matters of
which the court may take judicial notice, that the plaintiff's
claims are barred as a matter of law." *Staehr v. Hartford Fin.
Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis and
citation omitted); *see also Harris v. City of New York*, 186 F.3d
243, 250 (2d Cir. 1999) ("[D]ismissal is appropriate only if a
complaint clearly shows the claim is out of time."). Dismissal
is not appropriate when, notwithstanding a plaintiff's
allegations and any judicially-noticeable facts, there remain
material questions of fact. *See, e.g., OBG Tech. Servs., Inc.
v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d
490, 503 (D. Conn. 2007) ("A statute of limitations defense [ ]
most often ... requires a factual inquiry beyond the face of the
complaint"). "[T]he defendant bears the burden of establishing

---

[1] BSD informs the Court that the Governor of Vermont recently
signed into law S.33, which creates a new accrual date for
environmental contamination claims. The new law provides, in
part, that a cause of action "shall accrue so long as the
contamination remains on or in an affected property or natural
resource." ECF No. 32 at 1 (quoting Section 26 of S.33). The
accrual date applies to actions that were pending on the
effective date of the act. *Id.* at 2. The parties have not
fully briefed whether S.33 impacts this case, and the Court
offers no opinion on that issue at this time.

by prima facie proof that the limitations period has expired
since the plaintiff's claims accrued." *Overall v. Estate of
Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citation omitted).

BSD filed its Complaint on December 9, 2022, approximately
three years after receiving the PCB test results for the School.
Monsanto contends that BSD should have known sooner, and by 2015
at the latest, about the presence of PCBs.  For support,
Monsanto cites allegations in the Complaint describing public
awareness of PCBs and their inherent dangers.  Monsanto also
cites a 2013 memorandum from the Vermont Department of Health,
in which the State noted elevated levels of PCBs in schools in
the Northeast and described a new pilot study to investigate
PCBs in Vermont schools.  The following year, the Department of
Health notified BSD that it had detected PCBs above acceptable
screening levels at an elementary school within the school
district.  In 2015, the federal Environmental Protection Agency
("EPA") notified schools of the widespread use of PCBs in
building materials and recommended that schools consider
remediation and, if appropriate, indoor air testing.

BSD concedes the allegations in its Complaint and argues
that those facts, together with the information cited by
Monsanto, were insufficient to trigger the limitations period.
BSD contends that the information distributed prior to 2019 was
non-specific, that the question of claim accrual involves issues

6

of fact to be explored in discovery, and that dismissal at this
early stage in the case would be premature.  The Court agrees.

    The information cited by Monsanto suggests BSD knew or
should have known that, in general, older buildings could
contain PCBs.  The allegations and cited evidence do not
establish what BSD knew or should have known about the need to
test for actionable levels of PCBs at the School.  The
Department of Health observed that PCBs were being discovered in
buildings within the northeastern United States.  When a pilot
study tested for PCBs in four Vermont schools, "[t]here were
detections of PCBs in two of the schools" including a BSD
elementary school.  ECF No. 11-3 at 2.  The recommendation from
State officials was to replace certain light fixtures and clean
surfaces.  Testing at other schools was recommended ("You should
consider testing") if the schools had old and/or leaking
fluorescent lighting ballasts that were likely to contain PCBs,
or if the schools had not participated in a State-sponsored
lighting upgrade in the 1990s.  *Id.*  Nothing in the Complaint or
the information cited by Monsanto indicates whether BSD was
compelled to consider testing at that time.  Nor does the record
show that BSD knew or should have known of "the injury and its
cause."  *McLaren*, 2020 VT 8, ¶ 35.

    The cited guidance from the EPA suggested consulting with
the EPA Regional PCB Coordinator with respect to any potential

testing.  ECF No. 11-5 at 1.  The document also acknowledged
that each situation was unique, and that multiple factors needed
to be considered when deciding on testing.  *Id.* at 11.  The EPA
further recommended that schools conduct testing during
renovations and repairs, *id.* at 10, which is what BSD did in
2019.  In sum, the evidence cited in the motion to dismiss does
not establish that BSD was on sufficient notice to perform
testing, or that its knowledge of an injury was sufficient for a
cause of action to accrue, prior to 2019.  *See, e.g., In re
Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 725 F.3d
65, 112 (2d Cir. 2013) (holding that despite city's knowledge of
likely contamination, claim did not accrue when city did not
know whether property "had already been contaminated or that the
contamination was significant enough to justify an immediate or
specific remediation effort").

Other courts have reached this same conclusion in PCB-
related litigation.  *City of San Jose v. Monsanto Co.*, 231 F.
Supp. 3d 357, 366 (N.D. Cal. 2017) (noting that "[t]he extent of
the Cities' knowledge of PCB contamination, and whether that
knowledge limits the available relief, cannot be decided on a
motion to dismiss"); *Cnty. of Los Angeles v. Monsanto Co.*, No.
CV 19-4694-GW-AFMX, 2019 WL 13064885, at *8 (C.D. Cal. Nov. 21,
2019) ("While Defendants have pointed to facts indicating that
the waters managed by Plaintiffs were subject to regulation of

PCBs between 2005 and 2012, Defendants have not shown that that necessarily means that Plaintiffs would have known of their injury at those times.").  For example, in *Town of Princeton v. Monsanto Company, Solutia Inc., and Pharmacia Corporation,* the court found that a general press release issued by the EPA to school administrators expressing the dangers of PCBs and recommending remedial measures was "on its own [in]sufficient notice as a matter of law."  202 F. Supp. 3d 181, 189 (D. Mass. 2016).  "Without the benefit of discovery, the Court's context within which to assess the degree of notice provided by the press release is significantly limited."  *Id.* at 190.

Because Monsanto has raised the statute of limitations issue at the motion to dismiss stage, the Court must "draw all reasonable inferences in favor" of BSD.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Employing that standard, the Court finds that Monsanto is not entitled to dismissal based upon on the current record.  *See, e.g., Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) ("A statute of limitations analysis is generally riddled with questions of fact.").  The motion to dismiss for failure to file within the statutory time limit is therefore denied.

## III. Nuisance

Monsanto next moves to dismiss BSD's claims of private and public nuisance.  A private nuisance is "a substantial and

9

unreasonable interference with a person's interest in the use and enjoyment of land." *Jones v. Hart*, 2021 VT 61, ¶ 26.  A public nuisance is "an unreasonable interference with a right common to the general public."  Restatement (Second) of Torts § 821B(1); *see State v. Howe Cleaners, Inc.*, 2010 VT 70, ¶ 49 (citations omitted).  Although private and public nuisance are distinct causes of action, the distinction lies primarily in the nature and breadth of the impact.  "The public nuisance is an injury to the public at large or to all persons who come in contact with it; the private nuisance is injury to an individual or a limited number of individuals only."  *Adams v. Comm'rs of Trappe*, 102 A.2d 830, 834 (Md. 1954); *see also Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 943 (Md. 2011) (same).  "When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one."  *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1282–83 (Ill. App. 2005) (quoting Restatement (Second) of Torts § 821C, comment e).

The Vermont Supreme Court has not addressed either type of claim in the context of a product manufacturer defendant.  When state law is uncertain or ambiguous on an issue, the role of this Court is "carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."  *Yukos*

*Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020)
(internal quotation marks omitted).  "In doing so, [the Court]
give[s] fullest weight to the decisions of a state's highest
court and proper regard to the decisions of a state's lower
courts, and [] also consider[s] the decisions of federal courts
construing state law."  *Id.* (internal quotation marks omitted).
The Court further notes that when state law is undeveloped, "the
Vermont Supreme Court frequently looks to the Restatement for
guidance."  *Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 368
(D. Vt. 2021) (citing *Birchwood Land Co. v. Krizan*, 2015 VT 37,
¶ 9 ("We frequently have adopted provisions of this Restatement
where our law is undeveloped.")).

     Monsanto first challenges BSD's private nuisance claim,
arguing that such a claim is limited to nuisances caused by a
defendant's use of its own, neighboring property.  BSD contends
that a private nuisance claim may also be brought against a
manufacturer whose land is not nearby.  Both sides claim support
from Vermont lower court rulings.  *Compare State v. 3M Co.*, No.
547-6-19 CNCV, 2020 WL 13368654, at *4 (Vt. Super. May 28, 2020)
(concluding that a private nuisance claim need not originate on
a neighboring property) *with State v. Atl. Richfield Co.*, No.
340-6-14 WNCV, 2018 WL 11358617, at *9 (Vt. Super. July 31,
2018) (dismissing private nuisance claim alleging contamination
of Vermont waters from a non-neighboring source).  The

11

Restatement (Second) of Torts does not specify whether a private
nuisance must originate on neighboring land.  *See* Restatement
(Second) of Torts § 821D.

     With regard to public nuisance, the same lower Vermont
courts again reached different conclusions.  *Atlantic Richfield*
rejected a public nuisance claim brought against manufacturers
and distributors of gasoline containing MTBE, although the court
focused on statute of limitations and private access concerns
that are not presented here.  2018 WL 11358617, *11; *see State
v. Purdue Pharma L.P.*, No. 757-9-18 CNCV, 2019 WL 13274415, at
*3 (Vt. Super. Mar. 19, 2019) (finding public nuisance analysis
in *Atlantic Richfield* not "useful" since statute of limitations
and access to private lands were "not concerns in this case").
The *3M* court allowed a public nuisance claim, noting "language
in the Restatement suggesting that . . . 'substantial
participation' in a chain of actions can be sufficient" for
liability.  2020 WL 13368654, at *3 (citing Restatement (Second)
of Torts § 834 and cmts. d and e).

     As noted in *3M*, the Restatement provides that "[o]ne is
subject to liability for a nuisance caused by an activity, not
only when he carries on the activity but also when he
participates to a substantial extent in carrying it on."
Restatement (Second) of Torts § 834.  The Restatement further
provides that liability for private nuisance may arise where

                              12

"one person's acts set in motion a force or chain of events
resulting in the invasion."  Restatement (Second) of Torts § 824
cmt. b (cited in *City of Chicago v. Beretta U.S.A. Corp.*, 821
N.E.2d 1099, 1133 (Ill. 2004)).  For public nuisance claims,
Vermont follows Section 821B of the Restatement, *Howe Cleaners,
Inc.*, 2010 VT 70, ¶ 49, which describes, in part, an
unreasonable interference with a public right where the "conduct
is of a continuing nature or has produced a permanent or long-
lasting effect, and, as the actor knows or has reason to know,
has a significant effect upon the public right."  Restatement
(Second) of Torts § 821B(1), (2)(c).

The Restatement's "substantial participation" standard
applies to both private and public nuisance claims.  Restatement
(Second) of Torts § 834 & cmt. a.  Courts have held that
"substantial participation" is "satisfied when there was
evidence that the defendant, having sold a toxic or dangerous
substance to an identified third party, continued to sell the
same product to the third party for a profit knowing that that
third party would continue to use it in a manner that maintained
the nuisance."  *SUEZ Water New York Inc. v. E.I. du Pont de
Nemours & Co.*, 578 F. Supp. 3d 511, 548 (S.D.N.Y. 2022)
(referencing New York law); *see also In re MTBE Prod. Liab.
Litig.*, 725 F.3d at 121 (citing Restatement (Second) of Torts §
834 and upholding jury verdict where "Exxon was aware of MTBE's

13

tendency to spread quickly once released into groundwater.  In sum, the evidence supports a finding that Exxon knew that MTBE gasoline it manufactured would make its way into Queens, where it was likely to be spilled, and once spilled, would likely infiltrate the property of others.").

Here, Monsanto manufactured products with the knowledge that those products would be used in buildings, and allegedly knew that the products would be harmful to the people around them.  The Complaint also alleges that Monsanto withheld its knowledge from the public.  Accepting those allegations as true, it is plausible that Monsanto "substantially participated" in the creation of a hazardous condition that deprived BSD of the enjoyment of its property and significantly infringed upon the public right.  *See Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007) (allowing nuisance claim to proceed on a motion to dismiss where Monsanto allegedly made a conscious decision to suppress and conceal facts).

Monsanto argues that it cannot be held liable for nuisance because it did not control the PCB-containing products when they allegedly caused harm.  The PCBs were instead controlled by the buyers of Monsanto's products, and it was they who placed those products in the School.  The *3M* court addressed and rejected this same "control" argument:

14

     3M argues that the complaint lacks a necessary
allegation that the Defendants controlled the PFAS at
the time of the nuisance, and could not so allege
because Defendants relinquished control when they sold
the products.  3M cites no Vermont caselaw supporting
this argument, and the State accurately points to
language in the Restatement suggesting that a
defendant may be held liable for harm that continues
after that defendant's actions have ceased, and that
"substantial participation" in a chain of actions can
be sufficient.  Restatement (Second) of Torts § 834
and cmts. d and e (1979).  Other courts have rejected
similar claims by manufacturers.  *See, e.g., In re
Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
725 F.3d 65, 121 (2d Cir. 2013).

2020 WL 13368654, at *3.  Moreover, "[c]ourts interpreting

[Restatement (Second) of Torts § 821B] generally reject attempts

to impose a control requirement, instead focusing on whether the

defendant created or participated in the creation of the

nuisance."  *Illinois ex rel. Raoul v. Monsanto Co.*, No. 22 C

5339, 2023 WL 3292591, at *2 (N.D. Ill. May 5, 2023) (citation

omitted); *see also Mayor & City Council of Baltimore v. Monsanto

Co.*, No. CV RDB-19-0483, 2020 WL 1529014, at *9 (D. Md. Mar. 31,

2020) ("control is not a required element to plead public

nuisance under Maryland law").

     Given the significant guidance provided by the Restatement,

and the Vermont Supreme Court's established practice of turning

to the Restatement when presented with novel legal questions,

the Court predicts that Vermont would allow BSD's nuisance

claims to proceed at the motion to dismiss stage.  The

allegations against Monsanto, yet unproven, describe or infer

substantial participation in conduct that was harmful,
intentional, and unreasonable.  Such conduct has been held
sufficient for a nuisance claim.  *See, e.g., Illinois ex rel.
Raoul,* 2023 WL 3292591, at *3 (denying Monsanto's motion to
dismiss a nuisance claim); *Commonwealth v. Monsanto Co*., 269
A.3d 623, 652-53 (Pa. Commw. Ct. 2021) (allowing public nuisance
claim where Monsanto was allegedly "responsible for PCBs
entering the Commonwealth's waters because Defendants knew that
the uses for which they marketed, sold, and distributed PCB
mixtures would result in leaching, leaking, and escaping their
intended applications and contaminating (*i.e.*, polluting) those
waters"); *see also United States v. Ira S. Bushey & Sons, Inc.*,
363 F. Supp. 110, 121 (D. Vt. 1973) (citing updated Restatement
and upholding federal common law nuisance claim against alleged
polluter of Lake Champlain).

Monsanto submits that any extension of Vermont nuisance law
requires a "compelling public policy" reason.  *See Langle v.
Kurkul*, 146 Vt. 513, 320 (1986).  For such a reason, the Court
need look no further than the allegation of knowing and
widespread private and public harm resulting from the
manufacture and use of PCBs.  *See, e.g., Cnty. of Santa Clara v.
Atl. Richfield Co*., 40 Cal. Rptr. 3d 313, 329 (Cal. App. 2006)
("We do not believe that the fact that defendants were
manufacturers and distributors of lead means that they may not

16

be held liable for their intentional promotion of the use of lead paint on the interiors of buildings with knowledge of the public health hazard that this use would create."). Monsanto's motion to dismiss BSD's nuisance claims is denied.

## IV.  Trespass

Monsanto next contends that BSD fails to state a claim for trespass because there was no invasion or intrusion. Specifically, Monsanto contends that PCBs were brought onto the property by BSD itself, and that mere knowledge of the presence of PCBs at the School is insufficient for liability in trespass. Monsanto also argues that PCBs migrated from building products within the School onto adjacent surfaces also within the School, and thus did not enter (trespass upon) the School from a separate piece of land.

"Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000) (mem.) (citing Restatement (Second) of Torts § 158(a)).[2]  Under the

---

[2] The Vermont Supreme Court has expressly declined to determine whether the presence of airborne particles constitutes a trespass. *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 14 ("We leave for another day the question of whether the intrusion of airborne particulates may ever be a trespass, and, if so, what impact is required to sustain such an action."). The "modern view" in trespass law is to allow an action based on intangible entries. *See Stephens v. Koch Foods, LLC*, 667 F. Supp. 2d 768, 795 (E.D. Tenn. 2009).

Restatement, "[i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter."  Restatement (Second) of Torts § 158 cmt. i; *see also Canton*, 171 Vt. at 552 ("one who causes water to enter the land of another is liable for trespass").

The Complaint alleges that Monsanto knew its PCBs were substantially certain to enter School property.  At this early stage in the case, that allegation is sufficient for a plausible claim of common law trespass.  *See Illinois ex rel. Raoul*, 2023 WL 3292591, at *4 ("The State has alleged that Monsanto knew that the intended uses of its products would cause PCBs to invade Illinois['] natural resources, due to the laws of physics and chemistry.  No more is required for notice pleading."); *see also In re MTBE Prod. Liab. Litig.*, 725 F.3d at 120 (upholding trespass verdict where the jury found it "was substantially certain that [Exxon's] gasoline containing MTBE would leak from the gasoline distribution system and enter groundwater").  The motion to dismiss BSD's trespass claim is denied.

## Conclusion

For the reasons set forth above, Monsanto's motion to dismiss (ECF No. 11) is **denied**.

        DATED at Burlington, in the District of Vermont, this 26th

day of June, 2023.

                              /s/ William K. Sessions III
                              William K. Sessions III
                              U.S. District Court Judge