```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

BURLINGTON SCHOOL DISTRICT,    )
                               )
         Plaintiff,            )
                               )
    v.                         )    Case No. 2:22-cv-215
                               )
MONSANTO CO., SOLUTIA, INC.,   )
and PHARMACIA LLC,             )
                               )
         Defendants.           )
```

**OPINION AND ORDER**

The Burlington School District ("BSD") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School. Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto") are allegedly successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades, including when Burlington High School was built. The Complaint alleges that Monsanto failed to alert BSD to the dangers posed by the presence of PCBs in school buildings, testing revealed dangerous levels of PCBs on the school campus, and Defendants are now liable for the cost of razing and rebuilding the school. Pending before the Court is BSD's motion to compel materials from seven arbitrations in which Monsanto litigated PCB-related issues with insurers and tort plaintiffs. BSD also moves to compel privilege logs for materials from two mediations. For

the reasons set forth below, the motion to compel is granted in part and denied in part.

## Background

Monsanto has reportedly engaged in seven arbitrations and two mediations over the past 40 years regarding PCB liability. Two arbitrations took place in England in 2014 and 2017 between Monsanto and its insurers. Two other arbitrations occurred in California in 1984-85, again between Monsanto and its insurers. Three arbitrations took place in Missouri in 2015 between Monsanto and tort plaintiffs. Monsanto also mediated twice with tort plaintiffs in California in 2015. BSD has requested transcripts, sworn statements, exhibits, and discovery responses from those nine proceedings. Monsanto has not produced the documents, raising objections on grounds of relevance, confidentiality and/or privilege.

## Discussion

Under Federal Rule of Civil Procedure 26(b)(1), a party may seek any discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." When assessing proportionality, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

2

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In the discovery phase of a case, the concept of relevance is "liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

## I. Arbitration Materials

### A. Relevance

Beginning with the arbitration-related documents, BSD submits that the documents are relevant insofar as they speak to the toxicity of PCBs and Monsanto's knowledge of any such toxicity. Monsanto contends that such document production would be cumulative since those matters will be addressed in the context of BSD's other discovery requests: "BSD does not demonstrate that the other documents it seeks contain information that is relevant to the claims and defenses in this case, over and above the information that it will likely receive in response to other of its requests." ECF No. 82 at 13. In a related argument, Monsanto submits that BSD has failed to show that it is unable to obtain the same information through other discovery.

Monsanto cites no authority for the proposition that a party may not request discovery materials if those materials are "likely" to be produced in response to other requests. While

3

the Court acknowledges the volume of production in this case, including Monsanto's PCB Litigation Archive and its Archive Extension, BSD is entitled to seek documents from all sources so long as its requests meet the requirements of Rule 26(b)(1).

Monsanto also argues that BSD must meet a heightened relevancy standard given that the requested materials are confidential. The case upon which Monsanto primarily relies, *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011), addressed the confidentiality of settlement negotiations protected by a court order. As such, *In re Teligent* has been distinguished from a situation where, as in this case, parties entered into private agreements without a "prior court promise of confidentiality." *See Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 463-65 (S.D.N.Y. 2019). Monsanto cites to no authority applying a heightened relevancy standard to private arbitration proceedings.

Even assuming both confidentiality and a heightened standard, however, the Court finds that BSD has established sufficient relevance. While Monsanto argues that the arbitration proceedings in other jurisdictions did not directly address the claims brought in this case, BSD is nonetheless entitled to access Monsanto's documents to the extent they may relate to PCB toxicity and Monsanto's awareness of such toxicity over time.

4

### B. Confidentiality

Monsanto further objects to production on the basis of restrictions set forth in private confidentiality agreements entered into in the context of the arbitrations. Monsanto again relies on the Second Circuit's ruling in *In re Teligent* which, as discussed above, applied to court-ordered and court-protected mediation. 640 F.3d at 56-57, 62. Monsanto also cites Second Circuit precedent addressing the confidentiality of arbitration proceedings in the context of public access. *See, e.g., Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008) (rejecting whistleblower's argument that she should be able to inform co-workers of her claim); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (protecting confidential settlement amount revealed in court transcript). Those cases are not controlling, as general public access is not the same as a party seeking materials relevant to its litigation claims.

The Court agrees with BSD that a confidentiality agreement entered into by settling parties does not, in and of itself, bind third parties. Specifically, the alleged confidentiality agreements do not bar a third party from accessing information in discovery. *See, e.g., Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off.");

5

*Giannaccio v. United States*, No. 3:12CV609 (DJS), 2015 WL 13864988, at *3 (D. Conn. Mar. 3, 2015) ("The Court agrees that a confidentiality agreement entered into by settling parties does not, in and of itself, bar discovery of the settlement agreement by one not a party to the settlement.").

Moreover, discovery in this case is governed by a protective order.  As a result, any concerns about violating a confidentiality agreement may be assuaged by the existence of that order.  To the extent the protective order needs to be modified, the parties may propose such modifications to the Court.

    **C.**    **Privilege**

Monsanto next claims that the documents in question are privileged by the law of the jurisdictions in which the arbitrations took place.  Beginning with the English arbitration materials, English law imposes an "implied obligation" not to disclose arbitration materials "save with the consent of the other party, or pursuant to an order or leave of the court." *Emmott v. Michael Wilson & Partners Ltd.* [2008] EWCA Civ. 184. In this country, "[s]everal courts have concluded that the implied obligation under English law does not preclude production of ADR materials."  *Illinois ex rel. Raoul v. Monsanto Co.*, 345 F.R.D. 459, 462-63 (N.D. Ill. 2023).

6

Indeed, at least two courts recently ruled against Monsanto's objection to production of English arbitration materials based on the implied obligation of confidentiality. *See id.* at 463; *Frank v. Monsanto, et al.*, No. D-101-CV-2021-00581 (N.M. 1st Jud. Dist. Ct.).  The *Illinois* court reasoned that if it ruled in Monsanto's favor on the confidentiality question, "large multinational companies could mandate England as the required location for all arbitrations, produce a plethora of documents as part of those arbitrations and thus preclude the subsequent disclosure of relevant documents in any related U.S. litigation.  This is simply not a tenable or logical result."  345 F.R.D. at 463.  In *Veleron Holding, B.V. v. Stanley*, the United States District Court for the Southern District of New York focused on this country's "dedicat[ion] to open proceedings" in holding that, notwithstanding English confidentiality rules or agreements, "[p]rivate parties ... are not free to immunize materials that are relevant to some other dispute from disclosure in connection with a wholly separate dispute resolution proceeding."  No. 12 CIV. 5966 CM, 2014 WL 1569610, at *8 (S.D.N.Y. Apr. 16, 2014).  The Court finds these authorities persuasive and will not bar discovery on the basis of arbitration confidentiality or privilege provisions set in place under English law.

With respect to the California arbitration materials, BSD submits that while a choice-of-law analysis might ordinarily apply, such analysis is unnecessary here because both Vermont and California allow disclosure of arbitration materials. ECF No. 72 (noting that both states protect mediation materials but have no such protections for arbitration). Monsanto disagrees, citing California Evidence Code § 1119, which prohibits materials disclosed in a "mediation or mediation consultation." Because Section 1119 is limited to mediations and related settlement discussions, the Court finds that the arbitration materials are not protected under California law. *See Illinois*, 345 F.R.D. at 467 ("[T]o the extent that any of the proceedings in California were arbitrations and not mediations, they are not protected by § 1119.").

Like California, Vermont does not apply a privilege to arbitration proceedings. *See* 12 V.S.A. § 5720 ("mediation communications are confidential to the extent agreed to by the parties or provided by law"); ECF No. 82 at 11 (Monsanto briefing conceding that "Vermont statutory and judicial authority ... does not specifically provide arbitrations with the protections offered by the law of the forums where those occurred"). Missouri law, however, does apply an arbitration privilege. *See* Mo. Rev. Stat. § 435.014.2 (providing that arbitration proceedings "shall be regarded as settlement

8

negotiations" and that any communication "made during the resolution process ... shall be a confidential communication"); *Illinois*, 345 F.R.D. at 464 ("The language of the [Missouri] statute is precise and provides that no representation or statement made in conducting arbitration or mediations proceedings shall be admissible."). The Court must therefore determine whether, with respect to the Missouri arbitration materials, it applies Missouri privilege law or the law of Vermont as the forum state.

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "[I]n a diversity case, the issue of privilege is to be governed by the substantive law of the forum state." *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975). Such substantive law includes state conflict of law principles. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-96 (1941) (holding that the forum state "is free to determine whether a given matter is to be governed by the law of the forum or some other law"); *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) ("A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state."). Accordingly, the Court will apply Vermont's conflict of law rules to determine whether Missouri law or Vermont law

9

applies to the question of arbitration privilege. *See, e.g., Knapik v. Mary Hitchcock Mem'l Hosp.*, Case No. 5:12-cv-175, 2014 WL 12717392, at *4 (D. Vt. May 2, 2014).

Vermont has adopted the Restatement (Second) of Conflicts for choice-of-law questions in tort cases. *See Amiot v. Ames*, 166 Vt. 288, 292 (1997). Under the Restatement, a choice-of-law analysis concerning privileged evidence depends in significant part upon which state "has the most significant relationship with the communication ... unless there is some special reason why the forum policy favoring admission should not be given effect." Restatement (Second) of Conflict of Laws § 139. Comment d of the Restatement § 139 provides the following guidance for making that determination:

> Among the factors that the forum will consider in determining whether or not to admit the evidence are (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties. If the contacts with the state of the forum are numerous and important, the forum will be more reluctant to give effect to the foreign privilege and to exclude the evidence than it would be in a case where the contacts are few and insignificant.

Restatement (Second) of Conflict of Laws § 139, comment d.

In *Illinois*, the court applied these factors and concluded that the Missouri law, and not the law of Illinois as the forum state, governed the question of privilege. 345 F.R.D. at 465-

66. The court first concluded that "no contacts exist between Illinois and the Missouri arbitrations." *Id.* at 466. In this case, BSD concedes that the first factor favors applying Missouri law. ECF No. 72 at 15.

The *Illinois* court next determined that the plaintiff (the State of Illinois) had not "demonstrate[d] that the documents it seeks contain information that is material to the claims and defenses in this case and that the documents are not otherwise available elsewhere or in Defendants' prior productions." 345 F.R.D. at 465. Here, the Court finds to the contrary: that documents in PCB-related arbitration are likely material to the BSD's claims, and that the likelihood of duplicative evidence does not warrant applying the privilege. This factor therefore weighs in favor of applying Vermont law.

The next factor considers the kind of privilege involved. Comment d to Restatement § 139 explains:

> the forum will be more inclined to give effect to a foreign privilege that is well established and recognized in many states than to a privilege that is relatively novel and recognized in only a few states. The forum will also be more inclined to give effect to a privilege which, although different, is generally similar to one or more privileges found in its local law than to a privilege which is entirely different from any found in the state of the forum.

Restatement (Second) of Conflict of Laws § 139, comment d. As suggested by the comparison of California law and Vermont law to the law of Missouri with respect to arbitration privilege, the

11

arbitration privilege is not "well established." *Id.* It may also be said, however, that it is not "entirely different from any found in the state of the forum," as Vermont law does mandate a privilege for mediation proceedings. 12 V.S.A. § 5715(a). This factor therefore weighs only slightly in favor of applying Vermont law.

The fourth factor is fairness to the parties. Comment d again elaborates, explaining that fairness to the parties requires a determination of whether those parties relied "on the fact that [materials] involved are treated in strict confidence in the state of most significant relationship" and assessing "whether the privilege belongs to a person who is not a party to the action." Restatement (Second) of Conflict of Laws § 139, comment d. Here, the parties in Missouri most likely relied not only upon any private agreements with respect to privilege, but also upon Missouri law as it applied to the arbitration proceeding. *See, e.g., Equity Residential v. Kendall Risk Mgmt.*, 246 F.R.D. 557, 566 (N.D. Ill. 2007) (applying Connecticut law to privileged materials because "the individuals making these communications likely relied on the privilege as it applies in Connecticut"). The privilege also applied to persons or entities who are not represented here. The Court therefore finds that fairness to the parties weighs in favor of applying Missouri law.

Finally, the Court considers whether Vermont's contacts with the Missouri arbitrations are "numerous and important" such that Vermont would be "more reluctant to give effect to the foreign privilege and to exclude the evidence than it would be in a case where the contacts are few and insignificant." Restatement (Second) of Conflict of Laws § 139, comment d. Nothing in the record suggests that Vermont had any contacts with the Missouri arbitrations, as the only interest in those proceedings appears to be after-the-fact discovery of materials produced therein. Given the lack of contacts, the Court finds that Vermont would have little reluctance applying Missouri's arbitration privilege and that, in fact, the factors set forth in the Restatement's comment d weigh in Missouri's favor. The motion to compel is therefore granted with respect to materials from arbitrations that took place in England and California, but denied as to materials from the Missouri arbitrations.

## II.  Mediation Materials

BSD moves to compel Monsanto to produce a privilege log documenting materials withheld as a result of the California mediation privilege. Monsanto's relevance objections are, as discussed above, not persuasive. Similarly, the Court is not persuaded that such a log is not proportional to the needs of this financially-significant case, particularly absent any showing by Monsanto that the burden of creating a privilege log

13

would violate Rule 26(b).  BSD's motion to compel a privilege log is therefore granted.

## **Conclusion**

For the reasons set forth above, BSD's motion to compel (ECF No. 72) is granted in part and denied in part.

DATED at Burlington, in the District of Vermont, this 11th day of June, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge