```
                UNITED STATES DISTRICT COURT
                          FOR THE
                     DISTRICT OF VERMONT

BURLINGTON SCHOOL DISTRICT,    )
                               )
          Plaintiff,           )
                               )
     v.                        )   Case No. 2:22-cv-215
                               )
MONSANTO CO., SOLUTIA, INC.,   )
and PHARMACIA LLC,             )
                               )
          Defendants.          )
```

**OPINION AND ORDER**

The Burlington School District ("BSD" or "Plaintiff") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School ("BHS"). Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto" or "Defendants") are allegedly successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades. The Complaint claims damage resulting from PCB contamination at BHS.

Pending before the Court is Defendants' motion to exclude the testimony of two of Plaintiff's experts: Dr. David Rosner and Dr. Richard DeGrandchamp. For the reasons set forth below, the motion is denied.

**Background**

The Complaint alleges that PCBs are toxic and dangerous chemical compounds that were manufactured, marketed, and sold by

Monsanto in the United States from approximately 1929 to 1977. BHS was constructed in the 1960s, and testing recently revealed the presence of PCBs in its buildings. BSD concluded that because of PCB contamination, BHS had to be demolished.

BSD has retained two experts, Dr. David Rosner and Dr. Richard DeGrandchamp, to testify at trial about Monsanto's development of PCBs. Dr. Rosner is a history and sociomedical sciences professor at Columbia University, and the co-director of Columbia's Center for the History and Ethics of Public Health. According to his expert report, Dr. Rosner intends to offer opinions about what Monsanto knew, and what was knowable, when it was developing PCBs. Dr. Rosner is also expected to testify about testing conducted by Monsanto, warnings issued by the company, and Monsanto's adherence to industry and product stewardship standards.

Dr. DeGrandchamp is a toxicologist and professor of toxicology at the University of Colorado. He currently teaches at the University of Colorado Denver/Anschutz Medical Campus. Dr. DeGrandchamp's teaching includes courses on toxicology and risk assessment, while his research has focused on advances in the field of toxicology and toxicity testing. His expert report, which is divided into three books, discusses his opinions about Monsanto's alleged failure to test PCBs (Book One), Monsanto's "failure to consider, study, or control PCB bioaccumulation and

environmental persistence" (Book Two), and "PCB toxicity with specific focus on reproductive [sic] and neurotoxicity" (Book Three). ECF No. 163-2 at 31.

Defendants do not challenge these experts' professional qualifications to testify within their respective areas of expertise. Defendants' motion instead focuses on the substance of the expected testimony. With respect to Dr. Rosner, Defendants submit that his testimony will include impermissible editorializing about decades-old Monsanto documents. Defendants argue that the documents speak for themselves, and do not require "speculation" by an expert about their broader implications. Defendants also argue that some of Dr. Rosner's opinions, particularly regarding the chemistry of PCBs and general causation, are beyond his expertise.

For both Dr. Rosner and Dr. DeGrandchamp, Defendants object to any subjective interpretations of Monsanto's state of mind. Defendants are particularly concerned about testimony relating to Monsanto's intent. According to Defendants, the proposed testimony will include opinions on the company's concerns about legal liability, its efforts to control the public narrative about PCBs, and opinions about allegedly-intentional acts of obfuscation. Defendants further object to these experts offering legal opinions, such as opinions about Monsanto's compliance with what the experts view as the relevant industry standards.

3

Defendants' final objection is that these experts will be used as vehicles for hearsay, with their testimonies focusing on internal Monsanto communications, deposition testimony, and public documents.

Each of these objections is discussed more fully below, as well as Plaintiff's contention that its experts' testimonies will aid the jury by placing historical evidence in context. Plaintiff informs the Court that it does not intend to ask for speculation about Monsanto's state of mind, and argues that testimony about what was known and/or knowable during the relevant time periods is both relevant and admissible. Plaintiff also argues that Defendants' objections are premature.

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

4

Fed. R. Evid. 702. The Supreme Court has held that, for expert testimony to be admissible, it must satisfy three requirements: (1) the expert witness must be qualified; (2) the testimony must be reliable; and (3) the testimony must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). A trial court applying the *Daubert* standard "functions as the gatekeeper for expert testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). As Rule 702 indicates, the proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

**I.   Monsanto's State of Mind and Knowledge**

Defendants' first objection is that these experts will improperly testify about Monsanto's motives and mental state. Dr. Rosner, as a historian, will primarily testify about documents in Monsanto's archives and statements of company executives. Dr. DeGrandchamp, as a toxicologist, will testify about Monsanto's history of testing for toxicity. Plaintiff submits that each expert's testimony will help place the voluminous, and at times technical, record into historical context for the jury.

Defendants are concerned that Dr. Rosner's testimony will involve impermissible speculation, noting portions of his report where he opines that Monsanto was trying to "control the

5

narrative" or "shift responsibility to its customers for the safe disposal of PCBs." ECF No. 137-2 at 41, 45. Defendants express similar concerns about Dr. DeGrandchamp, as when he states in his report that Monsanto "had no intention of determining whether Aroclors were carcinogens" and "intentionally contaminated the U.S. food supply." ECF No. 137-3 at 12, 15.

The parties agree that speculation about state of mind is improper. *See* ECF No. 163 at 5 (Plaintiff's opposition brief stating: "To be sure, speculation that a party held a particular state of mind is not proper, but that is not what BSD intends to ask of Drs. Rosner and DeGrandchamp at trial."). Their primary disagreement focuses on whether the experts' testimonies will repeat any of the speculative statements set forth in their expert reports. Without knowing what the experts intend to say at trial, and particularly given Plaintiff's representation that it does not intend to elicit state of mind testimony, the Court cannot resolve that concern at this time.

Moreover, at least some of the proposed testimony will likely meet the requirements of Rule 702 and *Daubert*, as both witnesses are qualified to provide helpful, relevant, and reliable testimony about Monsanto's history with PCBs. The Second Circuit has noted that

6

> a historian's "specialized knowledge" could potentially aid a trier of fact in some cases. A historian could, for example, help to identify, gauge the reliability of, and interpret evidence that would otherwise elude, mislead, or remain opaque to a layperson. He or she might helpfully synthesize dense or voluminous historical texts. Or such a witness might offer background knowledge or context that illuminates or places in perspective past events.

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135–36 (2d Cir. 2013) (internal citations omitted); *see also Burton v. Am. Cyanamid*, 2018 WL 3954858, at *4 (E.D. Wis. Aug. 16, 2018) ("[A] historian's synthesis of various source materials that enables the jury to perceive patterns and trends can also be 'helpful' within the meaning of Rule 702. Courts have recognized the helpfulness of expert historians testifying in these ways.") (collecting cases).

Plaintiff's depiction of Dr. Rosner's proposed testimony is in line with what the Second Circuit contemplated in *Kirby*. He will testify about historical materials and, applying his expertise, place them into the context of relevant time periods. Dr. DeGrandchamp will similarly apply his expertise in testifying about evolving knowledge within the scientific community.

Insofar as these experts intend to testify about what Monsanto knew, and what was knowable, at certain time periods, case law supports the admission of such testimony. "To the extent that an expert adequately demonstrates a basis for an

7

opinion about what the defendants knew or should have known from such information that was within the defendants' possession, then such an opinion may be admissible at trial, if the proper foundation is laid." *Stults v. Int'l Flavors & Fragrances, Inc.*, No. C 11-4077-MWB, 2014 WL 12603223, at *3 (N.D. Iowa July 18, 2014); *see also Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461-62 (7th Cir. 2014) (without directly addressing a real estate developer's knowledge or state of mind, "[a] business expert can however testify about the state of knowledge prevalent in a business that he has studied"); *Gillis v. Cmty. Prods., LLC*, No. 5:22-CV-00080-DAE, 2024 WL 3548775, at *11 (W.D. Tex. July 9, 2024) ("To offer expert testimony on what Defendant either knew or should have known, Plaintiffs will first need to lay an appropriate foundation."). As the *Burton* court concluded, "it is certainly within the scope of a historian's expertise to draw inferences about historical actors' knowledge and beliefs based on evidence about the availability of information at a given historical moment in combination with contextual knowledge of that moment's general practices and mechanisms regarding information dissemination." 2018 WL 3954858 at *6.

The Court acknowledges Defendants' concern that Drs. Rosner and DeGrandchamp may testify consistent with their respective reports, and that those reports contain speculative statements.

However, Dr. Rosner's report is 515 pages long. The three-part report authored by Dr. DeGrandchamp totals 845 pages. The Court does not expect Plaintiff to offer those reports into evidence in their entireties, or for the witnesses to convey every statement and conclusion to the jury.

The testimony of all witnesses, including experts, will be constrained by the Federal Rules of Evidence. Until a statement or document is offered for admission, the Court will not rule on its admissibility in the abstract. While pretrial motions to exclude are useful and appropriate tools for trial management, the Court cannot rule if the content of the proposed testimony is undetermined. The parties agree that speculation about Monsanto's state of mind is inadmissible, and the Court finds generally, for purposes of Rule 702, that these experts may testify about what Monsanto knew, and what was knowable, regarding PCBs.

**II. Legal Conclusions**

Defendants next object to these witnesses offering legal conclusions. "As a general rule an expert's testimony on issues of law is inadmissable." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see Hygh v. Jacobs*, 961 F.2d 359, 363 (2d. Cir. 1992). Plaintiff does not dispute this general principle. Plaintiff further submits that the testimony described in Defendants' motion would not instruct the jury

9

about the law, nor would it usurp the jury's role in applying the law to the facts of the case. Instead, according to Plaintiff, the proposed testimony would inform the jury about relevant industry practices and standards, as well as applicable federal laws and regulations.

"Experts may . . . offer testimony discussing 'ordinary practices and usages' in a particular industry." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)); *see, e.g., Bilzerian*, 926 F.2d at 1295 (holding that "testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice"). As this Court has noted previously, expert testimony about ordinary practices in an industry is permissible "as long the expert's testimony does not cross the line into an ultimate legal conclusion based upon the facts of the case." *One Source Env't, LLC v. M + W Zander, Inc.*, No. 2:12-CV-145, 2015 WL 13186216, at *3 (D. Vt. June 8, 2015).

An expert may also testify about applicable laws and regulations, so long as the expert does not offer a legal conclusion about whether such rules were violated. *See Bilzerian*, 926 F.2d at 1294-95 (holding that the district court did not abuse its discretion in admitting expert testimony

10

regarding federal securities regulations where the expert "did not give his opinion as to whether [the defendant's] actions violated the securities laws"); *see also Am. Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (admitting expert testimony on FDA regulations where the court was "persuaded that [the expert's] testimony on these complex regulatory provisions [would] assist the trier of fact"). In this case, the purpose of such testimony, as proposed by Plaintiff, would not be to inform the jury about legal violations, but would instead place Monsanto's conduct into the context of industry practices and relevant regulations existing at the time. Such testimony is likely to help the jury evaluate Monsanto's conduct. *See In re Fosamax Prods. Liability Litig.*, 645 F. Supp. 2d 164, 190-91 (S.D.N.Y. 2009) (allowing expert testimony on compliance with FDA regulations where the expert's "assessment of the reasonableness of [the defendant's] conduct in light of her experience and her understanding of FDA regulations [would] be helpful to the jury").

    Defendants also object to statements characterizing Monsanto's conduct as unlawful, as in the use of terms such as "fraudulent" or "negligent." Plaintiff asks the Court to distinguish between the use of such words for their legal meaning as opposed to how a layperson might use those or similar terms.

11

The Second Circuit has allowed that an expert may use terms such as "fraud" or "deceit" so long as "it is clear from the content of his "direct and cross-examination that he used those terms in a non-legal sense." *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 826 (2d Cir. 1994), *abrogated on other grounds by Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996). The Court is nonetheless concerned that the use of such terms may be confusing for the jury, and warns that all witnesses – with guidance from counsel – should make efforts to avoid using legal words or phrases to characterize Monsanto's conduct. The Court further notes that if there is a reasonable chance of such confusion, "the proper remedy is curative instructions, not exclusion." *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *28 (S.D.N.Y. Mar. 1, 2023).

### III. Narrative Descriptions

Echoing the language of Rule 702, Defendants argue that narrative descriptions of background facts are not helpful or reliable, and do not require testimony from experts. "The trial court has always had broad latitude over the admission of evidence and it has been particularly broadened with respect to the admissibility or exclusion of expert evidence. This principle of broad discretion is never more evident where the court has to determine if the expert testimony will be helpful

12

to the fact finder." *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 473 (N.D.N.Y. 2004) (internal citations omitted).

As discussed previously, the Second Circuit has endorsed the use of experts to "helpfully synthesize dense or voluminous historical texts" or "offer background knowledge or context that illuminates or places in perspective past events." *Kirby*, 726 F.3d at 135–36. That endorsement applies here, as the historical record is both dense and voluminous, and the occurrence of relevant events over the course of decades makes it appropriate for experts to place those events into historical and scientific contexts. *See, e.g., City of Seattle v. Monsanto Co.*, No. C16-107-RAJ-MLP, 2023 WL 4014294, at *8 (W.D. Wash. June 15, 2023) (allowing witness to "employ[] his expertise to examine several historical documents concerning Defendants' use of PCBs and synthesizing what was knowable about the hazards of PCBs at relevant points of time into a coherent account").

With respect to reliability, Defendants have not questioned the qualifications of Drs. Rosner and DeGrandchamp to testify within their areas of expertise.[1] Nor have they seriously

---

[1] Defendants contend that Dr. Rosner is not qualified to testify about the effects of PCBs, and that Dr. DeGrandchamp's testimony about historical facts goes beyond his knowledge as a toxicologist. Once again, without knowing the precise bounds of the trial testimony, the Court cannot issue a ruling. The Court does note, however, that in a ruling on a similar objection to

13

challenged those experts' principles and methods. For purposes of determining Rule 702 reliability, the Court finds that both experts cite multiple historical and scientific sources from which they draw their conclusions, that Plaintiff has carried its burden of showing by a preponderance of the evidence that their work is reliable, and that "challenges to their sources and assumptions may be raised on cross examination." *Burton*, 2018 WL 3954858, at *7.

The parties agree that an expert may not narrate facts "in a way that crosses the line into closing argument territory." *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 5392995, at *6 (D. Vt. Oct. 23, 2014). As with Defendants' other objections, however, the admissibility of the witnesses' statements depends entirely on the specifics of their testimony. *See id.* ("The Court is necessarily limited in its ability to make specific findings because drawing the line between acceptable and unacceptable testimony in these categories inherently depends on the nature of the actual testimony."). A general objection to these "narrative witnesses" is therefore premature.

---

Dr. Rosner's co-author, the *City of Seattle* court found that "Dr. Markowitz's testimony does not significantly delve into the intricacies of the medical evidence synthesized regarding toxicology, chemistry, the technology of waste disposal, or disposal practices, but instead considers the historical availability of information about the health risks of PCBs." 2023 WL 4014294, at *8.

14

**IV. Hearsay**

Defendants further argue that these witnesses will serve as merely "conduits for hearsay." ECF No. 178 at 13-14; *see also* ECF No. 137 at 16-17. "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Kirby*, 726 F.3d at 136 (citation and quotation marks omitted). Nonetheless, "[u]nder [Federal Rule of Evidence] 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *see also United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001).

Here, both experts will be asked to testify about Monsanto's conduct over the course of several decades. The Monsanto archives and related testimony are the sorts of materials that such experts would "reasonably rely on" in forming their opinions. Furthermore, as noted in Plaintiff's briefing, exceptions such as the "ancient documents" rule set forth in Federal Rule of Evidence 803(16) may apply. Accordingly, while the Court does not foreclose future hearsay objections once specific materials are identified, it declines to issue a blanket order barring the use of Monsanto's records and statements by these two experts.

## Conclusion

The Court finds that Dr. Rosner and Dr. DeGrandchamp are qualified to testify as experts, and that Plaintiff has demonstrated by a preponderance of the evidence that their testimony will assist the trier of fact; that their sources of information are sufficient; that their methods and practices, set forth in their extensive expert reports, are likely reliable; and that they will reliably apply accepted principles and methods of toxicology and historical review to the facts at issue in this case. *See* Fed. R. Evid. 702. To the extent any of these conclusions is challenged by evidence presented at or immediately prior to trial, the Court will entertain appropriate objections as necessary.  Defendants' present motion to exclude (ECF No. 137) is denied.

DATED at Burlington, in the District of Vermont, this 6th day of March 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge