UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BURLINGTON SCHOOL DISTRICT,  )
                        )
       Plaintiff,      )
                        )
    v.                 )    Case No. 2:22-cv-215
                        )
MONSANTO CO., SOLUTIA, INC.,  )
and PHARMACIA LLC,        )
                        )
       Defendants.     )

**OPINION AND ORDER**

The Burlington School District ("BSD" or "Plaintiff") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School ("BHS"). Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto" or "Defendants") are allegedly successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades. The Complaint asserts a claim for damages resulting from PCB contamination at BHS.

Pending before the Court is Defendants' motion to exclude Plaintiff's expert Christine Lee. Lee is a financial analyst retained by Plaintiff to provide an opinion about the damages incurred as the result of PCB contamination. Defendants submit their motion to exclude pursuant to Rules 702 and 403 of the Federal Rules of Evidence. For reasons set forth below, their motion is denied.

**Background**

The Complaint alleges that PCBs are toxic and dangerous chemical compounds that were manufactured, marketed, and sold by Monsanto in the United States from approximately 1929 to 1977. BHS was constructed in the 1960s, and testing recently revealed the presence of PCBs in its buildings. The BSD concluded that because of PCB contamination, BHS had to be demolished.

Plaintiff hired Lee to calculate the cost resulting from PCB contamination at BHS, with the assumption that PCBs were the driving force behind the need to replace the school. Lee is a financial analyst and a Principal of Industrial Economics, Incorporated ("IEc"), an economics, finance, and environmental science consulting firm in Cambridge, Massachusetts. She received her undergraduate degree from the University of California at San Diego, and a Master's in Environmental Management from Yale University. Her graduate coursework included a mix of environmental sciences and economics. She has worked for IEc for over twenty years, focusing on financial analysis and economic damage calculations for public and private entities impacted by environmental harms. ECF No. 138-2 at 6-7.

Lee calculated the cost of replacing BHS as $313,415,891, with a present value of $216,383,648. She subtracted from this the "but-for" scenario cost of renovating the school if PCB contamination had not impacted the BSD's decision-making. That

alternative "but-for" cost scenario amounted to $113,906,963, with a present value of $81,182,478. Accordingly, Lee's total damages calculation, being the difference between the two scenarios calculated for present value, is $135,201,169.

Defendants' motion is critical of Lee's calculations in several respects. They first argue that her calculations are not consistent with Vermont law. Defendants contend that the Vermont Supreme Court has allowed only two ways to calculate damages in building contamination cases, and that Lee did not use either method. Defendants next argue that Lee's method is unreliable, as she allegedly failed to consider a $10 million estimate for remediating PCBs, failed to isolate damages attributable to PCBs, and did not adequately account for differences between the old and new BHS campuses. Defendants' third criticism is that Lee's calculation amounts to "simple arithmetic" and thus does not aid the jury. ECF No. 138 at 9, 18-19.

Plaintiff defends Lee's analysis and argues that, rather than bright line rules, the Vermont Supreme Court has endorsed a case-by-case approach with a focus on reaching a fair and reasonable result. Plaintiff argues that Lee's methodology is permitted under Vermont law, that her calculations are reliable and helpful, and that she should be allowed to present her opinions to the jury. Plaintiff further submits that Lee will not opine on whether BHS needed to be completely rebuilt, as

opposed to merely remediated, as that is a question of fact for the jury. Her job, instead, is to assume that PCBs compelled the BSD to rebuild the school, and to assess the cost of that decision.

## Discussion

## I.   Legal Standards: Rules 702 and 403

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Witnesses may testify as experts if they are "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."

4

*United States v. Pollok*, 139 F.4th 126, 140 (2d Cir. 2025) (internal quotation marks omitted).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403," which allows courts to bar evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403)). Because Rule 403 plays a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations," courts "weighing possible prejudice against probative force under Rule 403 . . . exercise[ ] more control over experts than over lay witnesses." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).

## II.   Vermont Law on Damages

Defendants contend that Lee's methodology is contrary to Vermont law. Their primary citation is the Vermont Supreme Court's holding in *Langlois v. Town of Proctor*, 2014 VT 130. *Langlois* involved a dispute with the Town of Proctor after the Town neglected to turn off the plaintiff's water as promised. As a result of the Town's inaction, the plaintiff's pipes froze and burst causing significant damage to her building. One question before the court was how to properly assess damages.

5

The Vermont Supreme Court noted that in the context of a tort action for damage to real property, it had previously stated the rule for damages as follows:

> If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. If the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury.

*Langlois*, 2014 VT 130, ¶ 41 (quoting *Bean v. Sears, Roebuck & Co.*, 129 Vt. 278, 282 (1971)). The Town of Proctor argued that the trial court should have also considered whether measuring damages according to the cost of repair is inappropriate if that cost is out of proportion to the underlying value of the property. *Id.*

*Langlois* acknowledged that "our explanation in *Bean* that '[i]t all depends up on the character of the property and the nature and extent of the injury' is not especially descriptive, but in that opinion we also refer to 'reasonable cost of repair' and a 'just award.'" *Id.*, ¶ 43 (quoting *Bean*, 129 Vt. at 282). The Vermont Supreme Court clarified that "[o]ur touchstone for determining damages, in tort as in contract, is reasonableness." *Id.* The court next concluded that, as the Town suggested, "the proportionality of cost-of-repair damages relative to the value of the property prior to a tort injury to property is part of

the general inquiry on the reasonableness of damages." *Id.* The
court also offered that although the trial court did not err in
providing a jury instruction consistent with the *Bean* standard,
"the instruction might have been clearer had it used the word
'reasonable' in reference to the amount of damages to be
awarded."  *Id.*, ¶ 48.

In this case, Defendants argue that the calculation of
damages is limited to the measures specifically set forth in
*Bean* and *Langlois*. Those measures distinguish between temporary
and permanent harm, with damages from temporary harm being
determined by the cost of repair, and damages from permanent
harm assessed according to the value of the property before and
after that harm. As the Vermont Supreme Court stated in
*Langlois*, a trier of fact may also consider the doctrine of
"economic waste" and determine whether it is reasonable to
assess the entire cost of repair in light of the relative value
of the property. *Id.*, ¶ 43. Because Lee's calculations did not
apply any of these methods, Defendants argue that they must be
excluded.

Defendants are correct that Lee's calculations did not
apply the measures described in *Bean* and confirmed in *Langlois*.
Specifically, she did not calculate the reasonable cost of
repair or evaluate the value of the property before and after
the harm. Instead, she considered that the BSD had planned a

7

thorough renovation of the school, set to cost over $100,000,000, but was instead compelled to raze and rebuild the school due to PCB contamination. She therefore subtracted the cost of the rebuild from the proposed cost of the renovation, reasoning that the only significant difference between the two scenarios was the presence of allegedly-harmful PCBs. Her analysis also considered the present value of interest payments, applied a discount rate, incorporated the cost of renting alternate spaces, and applied certain deductions given the larger size of the new building. Plaintiff submits that Lee's conclusions are reasonable, reliable, and consistent with Vermont law.

The Court agrees with Plaintiff that *Langlois* was not as rigid as Defendants depict. *Langlois* confirmed the holding in *Bean*, but also credited the Town of Proctor's contention that taking the value of the building into account is part of "the general inquiry on the reasonableness of damages." *Id.* The Vermont Supreme Court's flexibility on that point illustrates that while *Bean* provided a basic framework for certain types of injuries, that framework did not strictly limit what the court and the jury could consider when determining a reasonable damages award. As the court counseled in *Bean*, "[i]t all depends upon the character of the property and the nature and extent of the injury." 129 Vt. at 282.

8

The property in this case – a large, public high school – is significantly different in character from those at issue in *Langlois* and *Bean*. *Langlois* involved a privately-owned building with a commercial space on the first floor and an apartment on the second floor. 2014 VT 130, ¶ 1. *Bean* involved a polluted well on a farm. 129 Vt. at 280. In contrast to those two properties, BHS was a school building dedicated to a "special purpose," and as such would "not typically [be] sold on the open market," thus complicating the calculation of an underlying fair market value. ECF No. 144-2 at 10 (report of Defendants' expert Brian C. Underwood).

The nature and extent of the injury is also distinguishable. *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, 2021 WL 8344552, at *4 (D. Vt. Jan. 26, 2021) ("*Langlois* concerned the discharge of water which — while very damaging in the wrong location — is not a contaminant."). Unlike the water damage in *Langlois* or the water quality issues in *Bean*, the PCBs in this case allegedly made being on the BHS campus, particularly in certain buildings, dangerous to human health. The BSD, which had already planned a significant renovation, determined that renovation was no longer viable given the level of PCB contamination, and that the campus needed to be torn down.

9

Plaintiff submits that the reasonableness of the BSD's decision to destroy and rebuild BHS is a question of fact for the jury.[1] Defendants criticize the choice to raze and rebuild, arguing that Lee should have considered a proposed PCB remediation plan that would have cost approximately $10 million. Plaintiff argues that remediation itself would have involved unknown additional expenses, including permanent monitoring and the possibility of additional remediation if efforts to control the contamination were unsuccessful. Plaintiff further reports that the initial estimated cost of remediation did not include BHS's Building F, which test results revealed was the most contaminated building on campus. More relevant to the current motion, Lee was not asked to offer an opinion on those various unknowns. The BSD chose not to remediate, the jury may evaluate that decision, and Lee assessed the cost to Plaintiff of fully eradicating PCBs at the school.

---

[1] Defendants contend that there is no fact in dispute, and that their position on that question is argued in full in their motion for summary judgment. With respect to the instant motion to exclude testimony, the Court will consider that question only insofar as it is relevant under Rules 702 and 403. Lee's task was to perform an analysis as requested by the Plaintiff. She was not asked to review whether the BSD's decision to tear down and rebuild the school was reasonable under the circumstances. Moreover, whether Lee or another expert could have analyzed additional scenarios is not the issue. Instead, the Court considers only the contents of Lee's proposed testimony in the context of Vermont's substantive law and the Federal Rules of Evidence.

Defendants further contend that Lee failed to consider the doctrine of economic waste. As discussed previously, that doctrine essentially requires a cap on damages if those damages exceed the value of the building or property. In *Langlois*, the Vermont Supreme Court held that "the proportionality of cost-of-repair damages relative to the value of the property prior to a tort injury to property is part of the general inquiry on the reasonableness of damages." 2014 VT 130, ¶ 43. The court did not hold that consideration of economic waste must prevail over other measures of reasonableness. *Id.*

Moreover, the complexity of applying the doctrine of economic waste to BHS weighs against barring Lee's testimony on damages. Defendants intend to offer an expert who determined that the "use value" of BHS for its demolition was effectively zero due to accrued depreciation and deferred maintenance issues. ECF No. 134 at 45-46 n.7. Defendants therefore argue that "*any* cost-of-repair damages for PCBs would be unreasonable and excessive under the economic waste doctrine." ECF No. 179 at 10. While this issue, and others relevant to damages, will likely be addressed in the context of Defendants' motion for summary judgment and perhaps again at trial, the Court declines at this time to exclude an expert based on the theory the Plaintiff is not entitled to any damages.

11

Plaintiff is offering an expert to opine on what it deems to be a reasonable assessment of damages. The Vermont Supreme Court, while specifically endorsing certain measures of property damage, has regularly asserted that the "touchstone for determining damages . . . is reasonableness." *Langlois*, 2014 VT 130, ¶ 43 (citing *Bean*, 129 Vt. at 282). The Court finds that, rather than limiting that determination to precise formulas and doctrines, the Vermont Supreme Court has displayed flexibility depending on "the character of the property and the nature and extent of the injury." *Id.*, ¶ 43 (quoting *Bean*, 129 Vt. at 282). In this case, the character of the property is uniquely complex, and the nature and extent of the injury was allegedly widespread and toxic. The Court therefore finds that the formulas cited in *Bean* and *Langlois* do not limit the scope of what is reasonable, and will not exclude Lee's proposed testimony as inconsistent with Vermont law.

## III. Lee's Opinions

Defendants argue that Lee merely performed simple subtraction. Her report, however, reveals a more complex analysis. Lee modeled debt service payments by the BSD between 2020 and 2044, with coupons ranging from 3% to 6%, and converted the payments to present day value based upon the payment date. She also applied a discount rate. While Defendants argue that Lee failed to consider differences between the old and new

buildings, Plaintiff notes that she accounted for the larger size of the new building, deducting only those costs impacted by that larger size.

Defendants ultimately contend that because Lee's analysis is inconsistent with Vermont law, it is "irrelevant and unhelpful" and must be barred under Rule 702. Defendants do not challenge Lee's qualifications to conduct the analysis set forth in her report. They argue that she is not qualified to assess fair market value, yet that assessment is not part of her approach. Defendants' other criticisms, such as the claim that Lee improperly failed to consider utility upgrades in the new building, can be explored during cross-examination.

For purposes of a Rule 702 evaluation, the Court finds that Lee is qualified to conduct her analysis, that her report is reliable under Vermont law, and that her testimony will be helpful to the jury. Defendants do not challenge, and the Court finds no issue with, either her data or the principles applied in performing her calculations. In the end, Plaintiff has met its burden of showing by a preponderance of the evidence that Lee's analysis meets each of the requirements of Rule 702, including that her opinion reflects a reasonable application of her expertise to the facts of this case. Fed. R. Evid. 702(d).

The Court similarly finds that Lee's testimony, as described on the record to date, will satisfy the requirements

13

of Rule 403. *See* Fed. R. Evid. 403. Defendants argue that because her testimony is inconsistent with Vermont law, it may not be considered by a jury and its probative value is therefore outweighed by the risk of it being misleading or confusing. The Court finds that, to the contrary, Lee's analysis is within the bounds of the Vermont Supreme Court's approach to damages. Consequently, her testimony is likely to be probative on that issue. The motion to exclude her testimony under either Rule 702 or Rule 403 is therefore denied.

## Conclusion

For the reasons set forth above, Defendants' motion to exclude the expert testimony of Christine Lee (ECF No. 138) is denied.


DATED at Burlington, in the District of Vermont, this 18th day of March 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge