```
            UNITED STATES DISTRICT COURT
                      FOR THE
                DISTRICT OF VERMONT
```

BURLINGTON SCHOOL DISTRICT,   )
                              )
        Plaintiff,            )
                              )
   v.                         )   Case No. 2:22-cv-215
                              )
MONSANTO CO., SOLUTIA, INC.,  )
and PHARMACIA LLC,            )
                              )
        Defendants.           )

**OPINION AND ORDER**

The Burlington School District ("BSD" or "Plaintiff") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School ("BHS"). Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto" or "Defendants") are allegedly successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades. The Complaint asserts a claim for damages resulting from PCB contamination at BHS.

Pending before the Court is Defendants' motion to exclude all testimony of Plaintiff's experts Wendy Pearson and Robert Wanat. For the reasons set forth below, the motion is denied.

**Background**

The Complaint alleges that PCBs are toxic and dangerous chemical compounds that were manufactured, marketed, and sold by Monsanto in the United States from approximately 1929 to 1977.

BHS was constructed in the 1960s, and testing recently revealed the presence of PCBs in its buildings. The BSD concluded that because of PCB contamination, BHS had to be demolished.

Pending before the Court is Defendants' motion to exclude the testimony of two experts: Wendy Pearson and Dr. Robert Wanat. Ms. Pearson is a licensed engineer who has worked at Matson & Associates for over 25 years. Plaintiff initially retained Dr. Jack Matson to serve as an expert, but health issues prevent him from doing so. Plaintiff reports that "Ms. Pearson conducted extensive research and assisted directly in the preparation and drafting of Dr. Matson's expert report in this case, and adopted the findings in his report as her own in light of his health issues." ECF No. 162 at 6. Ms. Pearson has bachelor's and master's degrees in civil engineering and environmental science and engineering. She has also conducted peer-reviewed research relating to environmental contamination, chemical manufacturing industry standards and practices, and chemical releases from manufacturing and industrial facilities. Her expected testimony will include analysis of the standards and practices relevant to the manufacture and distribution of PCBs, and to the chemical engineering analysis of polymers and plasticizers.

Dr. Wanat holds an M.S. and a Ph.D. in chemistry from Cornell University. He has more than 30 years' experience

working for major chemical companies overseeing research and development of various chemical products. Since 2018, he has owned his own consulting company which specializes in the development, manufacture, and application of polymers, plastics, materials, and adhesives. Dr. Wanat is expected to testify about Monsanto's own documents, including past technical bulletins and studies about products containing PCBs, and place them in technical context.

## Discussion

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Witnesses may testify as experts if they are "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Pollok*, 139 F.4th 126, 140 (2d Cir. 2025) (internal quotation marks omitted).

## I.   Monsanto's Knowledge

Defendants first argue that opinions about what Monsanto should have known should be excluded. Their contention is that these witnesses' testimonies about the environmental impacts of PCBs – based in part on information from Monsanto's own archives – are "mere pronouncements" based on "subjective or speculative opinions," ECF No. 142 at 9, and would constitute a subjective interpretation "based on nothing more than a review of decades-old documents," *id.* at 10. Plaintiff submits that rather than offering subjective statements or speculation about Monsanto's state of mind, these witnesses will assist the jury by placing the documents in question into historical, technical, and scientific contexts.

Dr. Matson's report, which Ms. Pearson has adopted as her own (ECF No. 142-2 at 3), reviews the state of the science related to PCBs over several decades, beginning in the 1930s. The report cites both Monsanto's own records and studies conducted by scientists outside of Monsanto. Dr. Matson also explains the chemical nature of PCBs and what was known about

4

their dangers. To the extent the report offers any opinions about Monsanto's knowledge at a given time, those opinions are substantially supported by the reviewed documentation. In other words, Dr. Matson was not speculating about what Monsanto knew.

Dr. Matson does offer opinions about what Monsanto could have done to expand its knowledge. Those opinions are based on studies that were known in the scientific community and, in certain instances, by Monsanto itself. Again, to the extent Dr. Matson contends that Monsanto possessed certain knowledge, his opinions are supported by documentary evidence. Insofar as Dr. Matson opines on what Monsanto should have known, he explains his conclusions with concrete examples of information available to Monsanto at the time.

Defendants contend that Dr. Matson's focus on Monsanto's testing of paint products is not relevant here, since Plaintiff's claims reportedly focus on other materials such as building caulk. Dr. Matson provides historical evidence to suggest that Monsanto was aware of dangers in those other materials and could have conducted further testing based on that knowledge. That evidence is complex, and Ms. Pearson's expertise will assist the jury in understanding how it fits into the historical and scientific contexts.

In short, the Court finds that Dr. Matson's conclusions, and Ms. Pearson's expected testimony, are not based on

5

speculation. Nor do they constitute merely subjective narrations. Instead, they appear to be supported by a substantial documentary record that provides a foundation for their opinions. *See Stults v. Int'l Flavors & Fragrances, Inc.*, No. C 11-4077-MWB, 2014 WL 12603223, at *3 (N.D. Iowa July 18, 2014) ("To the extent that an expert adequately demonstrates a basis for an opinion about what the defendants knew or should have known from such information that was within the defendants' possession, then such an opinion may be admissible at trial, if the proper foundation is laid."); *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461–62 (7th Cir. 2014) (without directly addressing a real estate developer's knowledge or state of mind, "[a] business expert can however testify about the state of knowledge prevalent in a business that he has studied"); *Gillis v. Cmty. Prods., LLC*, No. 5:22-CV-00080-DAE, 2024 WL 3548775, at *11 (W.D. Tex. July 9, 2024) ("To offer expert testimony on what Defendant either knew or should have known, Plaintiffs will first need to lay an appropriate foundation."); *see also City of Seattle v. Monsanto Co.*, 2023 WL 4014294, at *8-9 (W.D. Wash. Jun. 15, 2023).[1]

---

[1] Defendants rely in part on the exclusion of Dr. Matson's testimony in *Town of Westport v. Monsanto Co.*, No. CV 14-12041, 2017 WL 1347671, at *3 (D. Mass. Apr. 7, 2017), *aff'd*, 877 F.3d 58 (1st Cir. 2017). In that case, both the district court and the First Circuit cited *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978

Dr. Wanat's report is similarly supported. He will testify about chemical evaporation generally, and with respect to PCBs specifically. He will also reference Monsanto's documents, including patents and technical bulletins. As with any experts, his trial testimony will need to be supported by a proper foundation. *See id.* At this stage in the case, the Court will not exclude the testimony of either Ms. Pearson or Dr. Wanat on the question of what Monsanto should have known about PCBs during the relevant time periods.

## II.  Standard of Care

Defendants next argue that Ms. Pearson's and Dr. Wanat's opinions regarding industry standards cannot be admitted because they are not supported by sufficient facts, are not based on any methodology, and constitute improper legal conclusions. Defendants characterize Ms. Pearson's opinions as "subjective speculation" based only on Monsanto's "corporate position statements" and "vague commentary from various associations and organizations regarding 'corporate social responsibility.'" ECF

---

F. Supp. 2d 1053, 1087 (C.D. Cal. 2013), which explained that "[Defendant's] knowledge (or lack thereof) is not a proper subject for expert testimony, and it must be established (if at all) by other evidence." The Court agrees that any testimony about Defendants' knowledge must be supported by other evidence.

No. 142 at 12-13. Defendants submit that "Dr. Wanat grounds his opinions on even less than Ms. Pearson." *Id*. at 13.

Dr. Matson's report cites several sources, including industry groups and individual corporate leaders, espousing a need for manufacturers to know whether their products are safe and to safeguard public health. He also cites Monsanto's own statements about a duty to protect both its consumers and the planet. Ms. Pearson intends to testify that Monsanto defined its own standard of care and failed to live up to that standard. Dr. Wanat's report is more limited, citing Monsanto's adherence to American Conference of Government Hygienists thresholds.

The Court questions whether the materials cited by Dr. Matson establish a standard of care, or whether they instead constitute general statements of corporate responsibility. Regardless of the distinction, the Court finds no reason at this time to exclude the testimony of either Ms. Pearson or Dr. Wanat, particular insofar as their testimonies are based on Monsanto's own statements about its responsibilities. *Cf. A.O.A. v. Rennert*, No. 4:11 CV 44 CDP, 2025 WL 2606548, at *18 (E.D. Mo. Sept. 9, 2025) (allowing Dr. Matson to testify about corporate social responsibility to the extent his "opinion also relate[s] to his standard-of-care opinion"). If Monsanto was asserting a duty to take certain precautions, and did not adhere

8

to either its own standards or those within the industry, such information may be considered by the finder of fact.

Defendants' final argument is that testimony about the standard of care consists of improper legal conclusions and "stand[s] in the shoes of the jury." ECF No. 142 at 14. Defendants particularly object to any testimony offering opinions on whether Monsanto violated a standard of care or acted reasonably. "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). "The best way to determine whether opinion testimony contains legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

Courts have held that a witness may testify about a defendants' adherence to industry safety standards. *See, e.g., Jay v. Royal Caribbean Cruises Ltd.*, 608 F. Supp. 3d 1249, 1261 (S.D. Fla. 2022) (holding that witness "may opine as to whether Defendant violated its own safety standards and industry standards, which are not legal conclusions and are beyond the expertise of an average lay juror"); *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 19-MD-02913-WHO,

9

2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022) ("That an expert testifies that a defendant violated industry standards or even identified regulations does not mean that the expert is making an impermissible legal conclusion; admissibility depends upon the context of the opinion (when it comes in and what it comes in for) as well as the claims at issue in particular cases.").

Whether an expert may opine on conduct being "reasonable" depends on context. If the term "reasonable" tracks an element of a cause of action, it constitutes an impermissible legal conclusion. *See Barile*, 286 F.3d at 760 ("To determine when a question posed to an expert witness calls for an improper legal conclusion, the district court should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and second, whether any terms employed have specialized legal meaning."); *see also Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 611 (S.D.N.Y. 2023) (assessing whether expert's expected testimony "track[s] the elements of Plaintiff's claim" to determine whether the expert impermissibly opines on an ultimate legal issue). If not, and if the testimony meets the requirements of Rule 702, such testimony may be admitted. *See, e.g.*, *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 175 (D. Mass. 2023) (allowing expert to opine as to the reasonableness of measures

10

taken to protect proprietary information, but not as to whether those measures met statutory requirements).

Here, Plaintiff submits that Dr. Wanat will use the term "reasonable" in its "ordinary, non-legal sense." ECF No. 162 at 16. Defendants have not identified an element of a pending cause action that would render the term "reasonable" an impermissible legal conclusion. Consequently, based on the information and briefing now before it, the Court declines to bar such testimony.

### Conclusion

For the reasons set forth above, Defendants' motion to exclude the expert testimony of Wendy Pearson and Robert Wanat (ECF No. 142) is denied.

DATED at Burlington, in the District of Vermont, this 7th day of April 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge